United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Yiwei Lu Silverio, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 23-60801-Civ-Scola |
| | ) |
| Just Brands, LLC, Defendant. | ) |

### Order on Motion to Dismiss

This matter is before the Court on the Defendant Just Brands, LLC's ("Just Brands") motion to dismiss (Mot., ECF No. 14) the Plaintiff Yiwei Lu Silverio's ("Lu Silverio") amended complaint (Am. Compl., ECF No. 10). Lu Silverio first filed this action in April 2023 in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida. (ECF No. 1.) Just Brands removed the case to this Court and filed a motion to dismiss (ECF No. 9), to which Lu Silverio did not respond. Instead, Lu Silverio filed an amended complaint within the deadline to amend as a matter of course. (Am. Compl., ECF No. 10.) Following Lu Silverio's amended complaint, Just Brands again filed a motion to dismiss. (Mot., ECF No. 14.) Lu Silverio has responded to the motion (ECF No. 15), and Just Brands has replied (ECF No. 16). Having reviewed the record, the parties' briefs, and the relevant legal authorities, the Court **grants** Just Brands's motion, as set forth herein. (**Mot., ECF No. 14**.)

### 1. Background[1]

Lu Silverio is a woman of Asian race and Chinese national origin. (Am. Compl. ¶ 4, ECF No. 10.) In October 2020, Lu Silverio was hired by Just Brands as a Procurement Manager, which meant she was responsible for a variety of tasks, such as sourcing promotional products and managing work with overseas factories in foreign countries. (*Id.* ¶ 20.) However, Lu Silverio's employment with Just Brands soon soured, as she began receiving an inordinately burdensome workload and was consistently mistreated by her immediate supervisors. These supervisors included Hussein Rakine ("Rakine"), the owner of Just Brands, and Brett Sandman ("Sandman"), one of Rakine's partners. (*Id.* ¶¶ 22–25, 35–36.) By Lu Silverio's account, the extreme workload

---

[1] This background is based on the allegations in Lu Silverio's amended complaint. For the purposes of evaluating Just Brands's motion to dismiss, the Court accepts Lu Silverio's factual allegations as true and construes the allegations in the light most favorable to her per Federal Rule of Civil Procedure 12(b)(6).

and abusive treatment to which she was subjected resulted from her employer's discrimination and harassment based on her Asian race and Chinese national origin. (*Id.* ¶ 21.)

Specifically, Lu Silverio alleges that, as an employee of Just Brands, she was required to work sixty to seventy hours per week. (*Id.* ¶¶ 21, 52.) Even though her offer of employment required her to report to Just Brands management exclusively, Lu Silverio was quickly informed by Rakine that she would be required to assist the officers and directors of other commercial entities as well. (*Id.* ¶¶ 26–28.) Early on, Lu Silverio expressed concerns to Rakine about working for multiple companies, but her concerns were ignored. (*Id.* ¶¶ 29–31.) In February 2021, for example, Rakine introduced Lu Silverio to Sandman by virtual means, and instructed her to help him with anything he needed, which, in turn, further burdened Lu Silverio, who was already working under multiple managers. (*Id.* ¶¶ 34, 37.) Per Lu Silverio, other similarly situated employees that were neither Asian nor Chinese worked only forty hours per week and were not required to report to so many supervisors. (*Id.* ¶¶ 34, 52.)

Lu Silverio also alleges that the terms and conditions of her employment with Just Brands were consistently changed without her consent. Among the critical changes was the fact that Lu Silverio was constantly required to perform lengthy translations using her Mandarin language skills. (*Id.* ¶¶ 38–42, 49–51, 54–57, 67–69.) Although Lu Silverio knew she was expected to use her Mandarin skills in her procurement duties, the job for which she was hired did not include translation services. (*Id.* ¶ 42.) Lu Silverio complained on multiple occasions that the translation assignments went beyond what her position entailed and were interfering with the development of her core assignments. (*Id.* ¶¶ 45–47, 54–56.) However, though Rakine at one point agreed to hire a freelance translator to handle some of Lu Silverio's translation work, Lu Silverio's complaints were, once again, for the most part ignored. (*Id.* ¶¶ 55–57.) Lu Silverio is adamant that other employees of Just Brands who were neither Asian nor Chinese were not required to assume duties outside of their specialty or job description. (*Id.* ¶ 74.) She points out as an example that when Just Brands' Director of Marketing, Melissa Acosta, balked at the suggestion that she take on certain additional responsibilities, those duties were not imposed on her and, instead, were shifted to lower-level staff. (*Id.* ¶ 75.)

Finally, the third category of mistreatment on which Lu Silverio bases her claims pertains to various incidents of verbal abuse. This verbal abuse came largely, if not exclusively, from Sandman, whose treatment Lu Silverio describes as "overtly hostile, demeaning, and abusive." (*Id.* ¶ 58.) In April 2021, for example, when Lu Silverio appeared at Just Brands's offices for a meeting,

Sandman, who had not met Lu Silverio in person before, greeted her by exclaiming, "Oh, you are the cheapshit Chinese girl? Sexy!" (*Id.* ¶ 60.) In another instance, this time in June 2021, Sandman expressed his frustrations regarding delays in a project by writing an email to Lu Silverio stating "Let's get this fucking done already. [It] does not have to be perfect." (*Id.* ¶ 77.) When Lu Silverio complained about the manner in which he was communicating with her, Sandman threatened Silverio that, if they missed their deadline, she would "hear more than just in email." (*Id.* ¶¶ 78–80.)

On June 15-16, 2021, Lu Silverio contacted Rakine and Lisa Goble, Just Brands's Director of Accounting and Human Resources, to complain about Sandman's derogatory conduct and unfair treatment toward Lu Silverio. (*Id.* ¶¶ 81–83.) Lu Silverio also complained to Goble about her disparately intense workload and inadequate supply of resources. (*Id.* ¶ 83.) On June 16, 2021, however, Lu Silverio was terminated from her employment with Just Brands, purportedly as a result of her failure to timely complete her assignments. (*Id.* ¶¶ 84–85.) Notwithstanding this, on June 21, 2021, Just Brands issued Lu Silverio a letter of recommendation commending her "professionalism and work ethic" and explaining that she was only terminated due to the merger of certain roles within the company. (*Id.* ¶ 86.)

Based on the foregoing set of facts, Lu Silverio brings nine claims against Just Brands: three counts of discrimination under the FCRA, Title VII, and Section 1981 (Counts One, Four, and Seven); three counts of hostile work environment under the FCRA, Title VII, and Section 1981 (Counts Two, Five, and Eight); and three counts of retaliation under the FCRA, Title VII, and Section 1981 (Counts Three, Six, and Nine).

**2. Legal Standard**

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to

nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### 3. Analysis[2]

### A. Administrative Exhaustion as to Race-Based Claims

Just Brands begins its motion to dismiss by arguing that all of Lu Silverio's race-based allegations must be dismissed because they fall outside the scope of her EEOC charge of discrimination. Because in her charge of discrimination Lu Silverio only refers to herself as a "Chinese-American," and does not specifically mention that she is Asian, Just Brands argues that her claims for race-based discrimination must be dismissed with prejudice. In response, Lu Silverio agrees that her complaint is limited by the scope of the allegations which can reasonably be expected to grow out of her charge of discrimination, but she counters that her claims of race discrimination fall squarely within the scope of the allegations in her charge of discrimination. The Court agrees with Lu Silverio.

Preliminarily, the Court notes that, while Just Brands's argument is directed at all of Lu Silverio's claims for race-based discrimination, it is only relevant to those brought under Title VII and the FCRA, and not to Lu Silverio's Section 1981 claims. It is well settled that "to file suit under Title VII, a plaintiff must first administratively exhaust any claims by filing a charge with the EEOC." *Francois v. Miami Dade Cnty., Port of Miami*, 432 F. App'x 819, 821 (11th Cir. 2011) (citing 42 U.S.C. § 2000e-5(e)). Accordingly, "[t]he scope of [a] judicial complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the *charge* of discrimination." *Id.* (emphasis in original) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455,

---

[2] Lu Silverio brings identical claims for discrimination (Counts One, Four, and Seven), hostile work environment (Counts Two, Five, and Eight), and retaliation (Counts Three, Six, and Nine) under the FCRA, Title VII, and Section 1981. Unless otherwise specified, each set of claims will be analyzed together. *See Lewis v. Sch. Bd. of Palm Beach Cnty.*, 850 F. App'x 674, 678 (11th Cir. 2021) ("Claims brought under the FCRA and § 1981 are subject to the same legal framework as Title VII claims."); *Pouyeh v. Bascom Palmer Eye Inst.*, 613 F. App'x 802, 809 (11th Cir. 2015) ("[C]laims brought under § 1981 and the FCRA need not be analyzed separately from Title VII claims, based on the same conduct."); *Gray v. City of Jacksonville, Fla.*, 492 Fed. App'x. 1, 3 (11th Cir. 2012) (stating that the plaintiff's claims of discrimination and retaliation under Title VII, the FCRA, and Section 1981 "must stand—or fall—together"); *Burstein v. Emtel, Inc.*, 137 F. App'x 205, 208 n.7 (11th Cir. 2005) (analyzing plaintiff's "FCRA claims concurrently with his Title VII and § 1981 claims"); *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) ("[W]e have repeatedly held . . . section 1981 and Title VII [] have the same requirements of proof and use the same analytical framework."); *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act.").

466 (5th Cir. 1970)). And, because the substantive aspects of Title VII and FCRA claims are the same, courts routinely apply the exhaustion requirements to both simultaneously. *See, e.g.*, *Prieto v. City of Miami Beach*, 190 F. Supp. 2d 1340, 1343 n.2 (S.D. Fla. 2002) (Jordan, J.) (dismissing claims for gender discrimination under both Title VII and the FCRA because the plaintiffs only charged discrimination based on race and/or national original); *Sencion v. Lady Burd Exclusive Cosmetics, Inc.*, No. 06-80772-CIV-JOHNSON, 2007 U.S. Dist. LEXIS 114717, at *9 (S.D. Fla. Feb. 12, 2007) ("Both Title VII and the FCRA contain the threshold requirement that a plaintiff exhaust administrative remedies before filing a civil action."). However, Section 1981 claims contain no such exhaustion requirement. *See Chandler v. Volunteers of Am., N. Alabama, Inc.*, 598 F. App'x 655, 665 (11th Cir. 2015); *Jackson v. United Parcel Serv., Inc.*, 593 F. App'x 871, 876 n.5 (11th Cir. 2014) ("§ 1981 has no exhaustion requirement."). So, even if Just Brands were correct that Lu Silverio's race-based allegations exceed the scope of her charge of discrimination, her claims pursuant to Section 1981 (Counts Seven, Eight, and Nine) could not be dismissed on this ground.

     Regardless, the Court does not agree that Lu Silverio's race-based allegations fall outside the scope of her charge of discrimination. "EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" *Cotton v. G.S. Development*, 390 F. App'x 875, 876-77 (11th Cir. 2010) (quoting 29 C.F.R. §1601.12(a)(3)). The purpose of the administrative exhaustion requirement is to allow the EEOC the first opportunity to investigate the alleged unlawful practices so that it may perform its role in obtaining voluntary compliance and conciliation. *See Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). While allegations of new acts of discrimination in judicial claims not raised in the EEOC charge are generally inappropriate, Courts are "extremely reluctant" to bar claims on such grounds. *See id.* at 1280 (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460–61 (5th Cir. 1970)). The proper inquiry is whether a complaint is "like or related to, or [grows] out of, the allegations contained in [the] EEOC charge." *See id.* at 1279-80; *see also Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) ("[T]he scope of a judicial complaint is defined by the scope of an EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970))). The race-based allegations in Lu Silverio's amended complaint plainly grow out of those in her EEOC charge.

For one, unlike in the cases cited by Just Brands, Lu Silverio's charge clearly states that it is based on "race discrimination," among other grounds. (*See* Resp. to Mot. to Dismiss Ex. A, ECF No. 15-1.) The cover page to the charge of discrimination specifically marks the box for discrimination based on race, and the charge itself makes four separate references to discrimination based on race. (*See id.*) In line with this, the notice of charge of discrimination received by Just Brands species that "[t]he circumstances of the alleged discrimination are based on National Origin *and Race*[.]" (*See* Mot. to Dismiss Ex. A, ECF No. 14-1 (emphasis added).) The thrust of Just Brands's argument is that, even though Lu Silverio alleges race-based discrimination throughout her charge, she never specifies her race—*i.e.*, Asian. However, while Lu Silverio never uses the word "Asian" in her charge, she does specify that she is "Chinese-American." (*See* Resp. to Mot. to Dismiss Ex. A ¶ 2, ECF No. 15-1.) And, while it is not impossible that one may be "Chinese-American" without also identifying (or, for that matter, appearing to others) as Asian, to argue, as Just Brands does, that Lu Silverio's charge "is entirely devoid of any reference to her race" is, at best, unfair. (*See* Resp. to Mot. to Dismiss 4, ECF No. 14.) Indeed, "a particular national origin can be reasonably understood to indicate a particular race or color in some instances, such as where the populace of that nation is overwhelmingly of a single race or color." *See Booth v. Pasco Cty.*, No. 8:09-CV-02621-T-30TBM, 2010 U.S. Dist. LEXIS 80287, at *25 (M.D. Fla. July 13, 2010) (quoting *Oranika v. City of Chicago*, 2005 U.S. Dist. LEXIS 24024, 2005 WL 2663562 (N.D. Ill. 2005)); *see also Bullard v. Omi Ga., Inc.*, 640 F.2d 632, 634-35 (5th Cir. 1981) ("The line between national origin discrimination and racial discrimination is an extremely difficult one to trace."). Here, the Court finds that the various references to race in Lu Silverio's charge, when combined with her specifying that she is Chinese-American, sufficiently put Just Brands on notice of the nature and scope of the race-based allegations now appearing in Lu Silverio's amended complaint.

Accordingly, the Court denies Just Brands's request for dismissal of all the race-based claims in Lu Silverio's amended complaint.

### B.   Counts One, Four, and Seven: Discrimination

Just Brands next argues that, even if Lu Silverio's race-based allegations survive, they must still be dismissed along with her national origin discrimination claims. Specifically, Just Brands contends that Lu Silverio's allegations focus on having been assigned an extremely burdensome workload but do not support a claim for discrimination. In addition, Just Brands argues that Lu Silverio fails to adequately support her allegations that similarly situated employees were treated differently. Unsurprisingly, Lu Silverio

counters that she has adequately supported her race-based and national origin discrimination claims. The Court agrees with Just Brands that Lu Silverio's complaint fails to supply facts that would satisfy the elements of Lu Silverio's claims of discrimination under the FCRA, Title VII, or Section 1981.

"[C]omplaints alleging discrimination . . . must meet the 'plausibility standard' of *Twombly* and *Iqbal*." *Henderson v. JP Morgan Chase Bank, N.A.*, 436 F. App'x 935, 937 (11th Cir. 2011). Thus, Lu Silverio's complaint must contain "sufficient factual matter" to support a reasonable inference that Just Brands engaged in intentional discrimination against her when, as she alleges, it assigned her an overly burdensome workload, altered the terms of her employment, subjected her to verbal abuse, and, ultimately, terminated her employment. *Henderson*, 436 F. App'x at 937.[3] There are any number of ways Lu Silverio can do this, using "either direct evidence or circumstantial evidence to show . . . discrimination." *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

Since Lu Silverio does not set forth any allegations of direct evidence of discrimination, one way Lu Silverio could state her discrimination claims, through circumstantial evidence, is by pleading facts that could establish Just Brands's discrimination through the *McDonnell Douglas* framework. *See Jaffe v. Birmingham Gastroenterology Associates, P.C.*, 2:20-CV-01821-KOB, 2021 U.S. Dist. LEXIS 176427, 2021 WL 4220356, at *2 (N.D. Ala. Sept. 16, 2021) ("[T]he traditional methods of proving Title VII claims remain relevant, as helpful guides to the determination of the issue.") (cleaned up). Under the *McDonnell Douglas* framework, a plaintiff bears the burden of establishing a prima facie case of discrimination by demonstrating (1) membership in a protected group; (2) an adverse employment action; (3) qualification for the job in question; and (4) either replacement by or less favorable treatment than a similarly situated individual outside the plaintiff's protected class. *Jenkins*, 26 F.4th at 1249. Lu Silverio has failed to plead facts that would allow the Court to reasonably infer that she satisfies the fourth prong.

As to this fourth prong, Lu Silverio "must identify a comparator outside of h[er] protected class who was similarly situated in all material respects, yet was treated more favorably under the same circumstances." *Hester v. Univ. of Alabama Birmingham Hosp.*, 798 F. App'x 453, 457 (11th Cir. 2020) (emphasis

---

[3] As specifically alleged by Lu Silverio, "[t]he Defendant's discriminatory treatment included, but was not limited to, subjecting Ms. Lu Silverio to racist and demeaning verbal abuse; assigning Ms. Lu Silverio an extremely burdensome workload; changing Ms. Lu Silverio's job duties for which she was hired; altering the terms and conditions of Ms. Lu Silverio's employment; requiring Ms. Lu Silverio to work 60 to 70 hours per week; threatening Ms. Lu Silverio; and unlawfully terminating Ms. Lu Silverio." (Am. Compl. ¶ 101, ECF No. 10.)

in original) (otherwise cleaned up). In opposition to Just Brands's motion, Lu Silverio highlights her allegations that Just Brands "treated similarly situated non-Asian and non-Chinese employees more favorably . . . by forcing [Lu Silverio] to report to and complete tasks for multiple managers rather than one manager, requiring [Lu Silverio] to work 60 to 70 hour workweeks, and subjecting [Lu Silverio] to demeaning and threatening remarks if she did not comply, among others," while "[n]one of [Lu Silverio's] similarly situated co-workers were subjected to the same harsh treatment." (Pl.'s Resp. at 7, ECF No. 15.) However, these allegations do not permit the Court to infer that Lu Silverio's co-workers who were outside of her protected class and purportedly not subjected to the same harsh treatment were similarly situated to Lu Silverio in all (or even any) material respects.

Lu Silverio provides only one specific instance of another employee outside of her protected class receiving better treatment: she alleges that Acosta was tapped to take on additional duties "but, when she balked at taking on such additional duties, which were extraneous to her responsibilities as Defendant Just Brand's Director of Marketing, Defendant shifted such duties to lower-level staff." (*Id.* ¶ 75.) This one sentence falls far short of providing sufficient information from which the Court can infer that Acosta was similarly situated in all relevant aspects to Lu Silverio. To the contrary, in pointing out that Acosta was "Just Brand's Director of Marketing," it suggests that Acosta's role must have been different from Lu Silverio's, who instead was hired as a "Procurement Manager." (*Id.* ¶ 19.) Indeed, Lu Silverio also alleges that at one point Acosta enlisted Lu Silverio to aid in a project, which suggests that Acosta may have had some authority over Lu Silverio. (*Id.* ¶ 71.) *See Henderson v. Dade Cnty. Police Benev. Ass'n, Inc.*, 14-20321-CIV-MORENO, 2014 U.S. Dist. LEXIS 98159, 2014 WL 3591600, at *8 (S.D. Fla. July 18, 2014) (Moreno, J.) (dismissing discrimination claims where the plaintiff's conclusory assertions that Hispanic males were promoted to the exclusion of Black women were "without factual support as to how each was similarly-situated in all relevant aspects to the Plaintiff" and, were, therefore, "insufficient").

Moreover, all of Lu Silverio's other allegations on this point are conclusory in nature because they simply refer, in general terms, to "similarly situated" employees, without providing any supporting factual information, such as whether said employees' duties were similar to Lu Silverio's, or whether they had comparable qualifications and skills. (*See* Am. Compl. ¶¶ 34, 52, 65, 74, ECF No. 10.) Lu Silverio provides no information about her skills, experience, credentials, or education as compared to that of all those other purportedly similarly situated employees. *See Parish-Carter v. Avossa*, 9:16-CV-81623, 2017 U.S. Dist. LEXIS 96967, 2017 WL 2720966, at *3 (S.D. Fla. June

23, 2017) (Rosenberg, J.) (finding allegations that the relevant similarly situated employees had "fewer credentials, less experience, and fewer service years than Plaintiff" sufficient to survive dismissal).

Thus, at bottom, Lu Silverio's allegations, at most, are nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and therefore "do not suffice." *Watts v. Ford Motor Co.*, 519 F. App'x 584, 586 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). While a plaintiff complaining of workplace discrimination need not set forth every detail of her employment or every single instance of the discriminatory conduct she endured, she must nonetheless provide at least some "nonconclusory descriptions of specific, discrete facts of the who, what, when, and where variety" that plausibly show she is actually entitled to relief. *Watts*, 519 F. App'x at 587 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)); *see Veale v. Fla. Dep't of Health*, 2:13-CV-77-FTM-38UAM, 2013 U.S. Dist. LEXIS 105665, 2013 WL 5703577, at *5 (M.D. Fla. July 29, 2013) (requiring "allegations of specific facts to explain how the disparate treatment occurred" in order to properly plead discrimination).

Nor do any of Lu Silverio's other allegations, taken together, otherwise "present[] a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (cleaned up). A plaintiff may meet this standard by showing, "among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019) (cleaned up). "The 'convincing mosaic' method of proof can be a fallback for plaintiffs," like Lu Silverio, "who fail to allege a similarly situated comparator under *McDonnell Douglas*." *Jaffe v. Birmingham Gastroenterology Associates, P.C.*, 2:20-CV-01821-KOB, 2021 U.S. Dist. LEXIS 176427, 2021 WL 4220356, at *4 (N.D. Ala. Sept. 16, 2021).

Again, Lu Silverio's allegations come up short. In concluding that Just Brands acted discriminatorily against her, Lu Silverio recounts that she was assigned to complete translation work that was outside the scope of her anticipated duties, which, as a result, interfered with her ability to complete her regular workload; that she was subjected to harsh commentary from Sandman, one of her supervisors, largely (if not exclusively) in relation to the pace of her work; and that she was terminated from her employment after complaining, for the sixth time, about her workload and Sandman's corresponding treatment. (*See* Am. Compl. ¶¶ 29, 45, 54, 69, 78, 81, ECF No.

10.) While Lu Silverio's allegations certainly suggest that she may have been subjected to an unusually challenging work environment, without more, the Court cannot possibly infer discriminatory intent based on this short list of unremarkable facts.

For one, the allegations that Lu Silverio was assigned a more burdensome workload, without any indication that this was motivated by Lu Silverio's race or national origin, fail to suggest discriminatory intent. Even if a significant portion of Lu Silverio's increased workload came from assignments to translate materials from English to Mandarin, this merely indicates that Lu Silverio was asked to complete tasks for which she was uniquely qualified. *See, e.g., Buelna v. Chandler*, No. 90-15731, 1991 U.S. App. LEXIS 13240, at *7 (9th Cir. June 18, 1991) ("Thus, even if the department did request more from Buelna in the way of translating skills, it was due to his proven abilities rather than his national origin."); *Powell v. Birmingham Heart Clinic, P.C.*, No. 2:19-cv-00309-MHH, 2021 U.S. Dist. LEXIS 173834, at *20-21 (N.D. Ala. Sep. 13, 2021) ("The ability to speak Spanish is not uniquely tied to Hispanic ancestry. . . . On the record before the Court, Ms. Powell's claim for discriminatory work assignments based on her translation responsibilities is not sufficiently rooted in the discrimination that Congress sought to address under § 1981."). Indeed, Lu Silverio acknowledges in her complaint that she "knew she was expected to use her language skills in her procurement duties[.]" (*See* Am. Compl. ¶ 42, ECF No. 10.) The fact that her employer may have wanted her to use these skills more frequently than she anticipated, or even desired, does not indicate that it discriminated against her.

Moreover, practically all the instances of "racist and demeaning verbal abuse" that Lu Silverio provides, while certainly unpleasant, indicate Sandman's unhappiness with the rate at which Lu Silverio was completing her assigned tasks. This, in turn, undercuts Lu Silverio's claim that her termination was motivated by discriminatory animus. To the contrary, it indicates that it was instead the result of irreconcilable differences between Lu Silverio and one of her immediate supervisors. And the single comment that actually referenced Lu Silverio's background—*i.e.,* "Oh, you are the cheapshit Chinese girl? Sexy!"—while crass, does not suffice to show discrimination. By Lu Silverio's own description, this was Sandman's perverse way of "greet[ing]" her upon meeting her for the first time. (*Id.* ¶¶ 59, 60.) In short, Lu Silverio's allegations fall far short of painting a "convincing mosaic" that the allegedly differential treatment to which she was subjected was motivated by any kind of discrimination against her. *See Taylor v. Farm Credit of N. Florida*, ACA, 4:20-CV-59-AW-MJF, 2021 U.S. Dist. LEXIS 215875, 2021 WL 5148022, at *5 (N.D.

Fla. Oct. 6, 2021) (describing a mosaic, in the context of a discrimination claim, as "compris[ing] many parts which combine to form an overall picture").

Thus, to summarize, Lu Silverio has failed to plead facts establishing discrimination against her under either the FCRA, Title VII, or Section 1981. Lu Silverio's complaint does not plead sufficient facts to allow for a plausible a link between the employment differences she cites and her race or national origin. Correlation and causation are not the same; possibility and plausibility are distinct. While Lu Silverio's "allegations might have survived a motion to dismiss prior to *Twombly* and *Iqbal*[,] now they do not." *Ansley v. Fla. Dept. of Revenue*, 409CV161-RH/WCS, 2009 U.S. Dist. LEXIS 57916, 2009 WL 1973548, at *2 (N.D. Fla. July 8, 2009) (requiring a "plaintiff in an employment-discrimination case [to] allege facts that are either (1) sufficient to support a plausible inference of discrimination, or (2) sufficient to show, or at least support an inference, that he can make out a prima facie case under the familiar burden-shifting framework set forth in *McDonnell*").

### C. Counts Two, Five, and Eight: Hostile Work Environment

Just Brands also argues that Lu Silverio's allegations fail to meet the threshold for a hostile work environment because they do not show that she was subjected to pervasive mistreatment based on a protected characteristic. In response, Lu Silverio argues that she has adequately described how she was subjected to a work environment rife with severe and pervasive discriminatory conduct, including because she was forced to work extremely long work hours compared to her non-Chinese/non-Asian co-workers, intimidated and threatened when she complained about the treatment she was receiving, removed from her workspace without prior notice, and called discriminatory remarks.

To establish a claim of a hostile work environment based on race or national origin, an employee must prove "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Mahone v. CSX Transportation, Inc.*, 652 F. App'x 820, 823-24 (11th Cir. 2016) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). To show this, a plaintiff must satisfy the following elements: "(1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment [was] based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment

under either a theory of vicarious or of direct liability." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008). Based on the well-pled allegations in the complaint, Lu Silverio is unable satisfy the fourth element. Because of this obvious deficiency, the Court does not analyze the remaining factors.

The majority of the difficulties Lu Silverio sets forth in her complaint were not connected to her race or national origin at all. Indeed, the precipitating factors of most of the incidents Lu Silverio describes were related to the type and amount of work she was assigned, and the pace at which she was completing that work. For example, Lu Silverio alleges that even though she knew she was expected to use her language skills in her procurement duties, her job became consumed with performing translation tasks, and she believes she was being overburdened with these translation-related tasks solely because of her Asian race and Chinese national origin. (Am. Compl. ¶¶ 42–44, ECF No. 10.) However, as touched on above, the fact that Lu Silverio was assigned more work than others as a result of her language skills does not indicate harassment based on a protected characteristic. Not everyone that speaks Mandarin is Asian or Chinese, and vice versa. Similarly, most of Lu Silverio's unpleasant encounters with Sandman related to his unhappiness with the pace at which she was completing her work. (*See, e.g.*, *id.* ¶¶ 67–68, 77–79.) Whether that unhappiness was merited is not at issue: rather, the point is that Lu Silverio has not alleged sufficient facts to allow the Court to infer that the poor treatment to which she was subjected was motivated by her race or national origin.

In addition, the other incidents Lu Silverio highlights likewise fail to meet the severity or pervasiveness required to adequately allege a hostile work environment. Lu Silverio's argument that she was subjected to humiliating and isolating conduct when her workspace was given away to another employee is undermined by her statement that she "customarily worked remotely." (*See id.* ¶ 59.) And, while the Court acknowledges that Sandman's greeting in which he referred to Lu Silverio as a "cheapshit Chinese girl" is potentially indicative of *some* discriminatory animus, this single comment, over the entire period of Lu Silverio's employment with Just Brands, does not suffice to show that the latter's workplace was permeated with the alleged discriminatory conduct. *See, e.g., Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982) ("[T]he mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the terms, conditions, or privileges of employment to a sufficiently significant degree to violate Title VII." (cleaned up)).

Analysis of the fourth element of a hostile-work-environment claim "includes a subjective and objective component." *Mahone*, 652 F. App'x at 823-24 (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999)) (en

banc). In other words, "the employee must personally perceive the harassment as severe and pervasive, and the environment must be one that a reasonable person in the employee's position would find hostile or abusive." *Jones v. City of Lakeland*, 318 F. App'x 730, 735-36 (11th Cir. 2008). "The objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Mahone*, 652 F. App'x at 823-24. In conducting the objective inquiry, the court must consider "the totality of the circumstances" including the following factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating or a mere offensive utterance; (4) and whether the conduct unreasonably interferes with the employee's job performance. *Id.* Moreover, Title VII is not a "general civility code" that makes actionable ordinary workplace "tribulations." *Id.* (citing *Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1234 (11th Cir. 2006)).

In short, although Lu Silverio may have felt uncomfortable, and perhaps even humiliated, as an employee of Just Brands and, in particular, as a result of Sandman's treatment, her allegations do not reveal conduct that is so frequent, severe, and disruptive "that a reasonable person in the employee's position would find hostile or abusive." *Jones*, 318 F. App'x at 735-36. Indeed, as previously touched on, Lu Silverio's allegations suggest that Sandman's greeting in which he referred to Lu Silverio as a "cheapshit Chinese girl," although arguably offensive, was an isolated incident that was uttered in an offhand manner. *Henderson v. Waffle House, Inc.*, 238 Fed. Appx. 499, 501 (11th Cir. 2007) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") (cleaned up). The Eleventh Circuit has repeatedly held that significantly more egregious comments and conduct were insufficient to establish a hostile work environment claim based on race or national origin. *See, e.g.*, *Singleton v. Auburn Univ. Montgomery*, 520 F. App'x 844, 847-49 (11th Cir. 2013) (concluding that racist comments such as being called "Do Boy," being asked to leave a meeting of supervisors, being told to "watch [his] back" because of his race, while deplorable, were not severe or pervasive enough to create a hostile work environment); *Dominguez v. Lake Como Club*, 520 F. App'x 937, 938-41 (11th Cir. 2013) (holding that comments such as, "I hate fuckin' Cubans" and "we don't have any Mexicans working here[,] but we got the next best thing, a Cuban" were not sufficiently humiliating).

Accordingly, the Court finds that Lu Silverio has failed to plead facts establishing a case of a hostile work environment based on race and national origin under the FCRA, Title VII, or Section 1981.

### D. Counts Three, Six, and Nine: Retaliation

Last, Just Brands argues that Lu Silverio's claims for retaliation must be dismissed because she has failed to allege that any of the adverse employment actions she complains of resulted from her participation in a protected activity. Lu Silverio responds by pointing out that she did, in fact, complain about the treatment she was receiving to Sandman and others on June 15-16, 2021, and was terminated from her employment shortly after. However, because Lu Silverio has not alleged that those complaints pertained to her perceived discrimination based on her race or national origin, the Court must agree with Just Brands.

To establish a prima facie case of retaliation, the Plaintiff must establish that: (1) the Plaintiff engaged in statutorily protected expression, (2) the Plaintiff suffered an adverse employment action, and (3) there was a causal connection between the protected expression and the adverse employment action. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). Here, Lu Silverio's claims for retaliation fail on the first element.

Statutorily protected expression includes the filing of formal complaints, informal complaints voiced to an employee's superiors, and the utilization of internal grievance procedures. *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (citations omitted). To establish statutorily protected conduct, "a plaintiff must show that he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (internal quotations omitted) (citing *Little v. Untied Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). A plaintiff must show both that she subjectively believed that the employer engaged in unlawful discrimination, and that this "belief was objectively reasonable in light of the facts and record present." *Id.* (emphasis in original) (internal quotations omitted).

Critically, "[a] complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Hamilton v. Sheridan Healthcorp, Inc.*, 602 F. App'x 485, 489 (11th Cir. 2015); *see also Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (same). In *McNeal v. Int'l Paper,* for example, the Eleventh Circuit affirmed the district court's conclusion that the plaintiff failed to show she had engaged in a statutorily protected activity because her alleged complaint did not make any reference to the grounds on which she believed she was being discriminated. No. 21-12672, 2022 U.S. App. LEXIS 28082, at *14 (11th Cir. Oct. 7, 2022)

("[H]er grievance, however, makes no reference to race or sex discrimination. As such, we conclude that her grievance is not aimed at an unlawful employment practice under Title VII and is not statutorily protected."); *see also Banks v. iGov Techs., Inc.*, 661 F. App'x 638, 645 (11th Cir. 2016) ("To the extent Plaintiff is relying on his human resources complaint or the email he sent to human resources in April 2013, those communications do not refer to any unlawful employment action by Defendant[.]").

In her response, Lu Silverio supports her contention that she engaged in statutorily protected expression by pointing to the complaints she made on June 15 and 16, 2023, in response to Sandman's increasingly rude treatment. However, though Lu Silverio states that, on these dates, she "complained about the *discriminatory* treatment she was experiencing" (Resp. at 13, ECF No. 15 (emphasis added)), this is undermined by her allegations. Specifically, what Lu Silverio actually alleges is that she "complained to Sandman that he was way out of line for speaking to her in [] a foul and unprofessional way," that she "requested a meeting to address Sandman's derogatory conduct and his unfair treatment," and that she "complained . . . about the unfair treatment she was experiencing at the hands of Sandman[,] . . . about her disparately intense workload and inadequate supply of resources[,]" and about "th[e] management issue that [wa]s affecting [her] work." (Am. Compl. ¶¶ 78, 81–83, ECF No. 10.) Lu Silverio uses the term "discriminatory" only once in her allegations describing her complaints, and this is in reference to the meeting which she first describes as broadly intended "to address Sandman's derogatory conduct and his unfair treatment." (*Id.* ¶ 81–82.) Lu Silverio never alleges that she complained, explicitly or otherwise, that Sandman was discriminating against her because she was Asian or Chinese. And this makes sense when one reviews the language that prompted Lu Silverio's complaints because, though certainly unpleasant, it focuses on the timeline of her work and did not touch on her protected characteristics at all. (*See id.* ¶ 77 ("Let's get this fucking done already. [It] does not have to be perfect[.]"); *id.* ¶ 79 ("I can find someone to do this faster. If I want to email that I am pissed off bc we have [a] deadline July 1 […] and bc of snail pace this [is] going[.] [I]f I miss it, you will cause me to lose 500k euros a month.").) Moreover, none of Lu Silverio's other alleged complaints made any reference to the grounds on which she believed she was being discriminated either. (*See id.* ¶¶ 29, 45, 54, 69.)

In short, because Lu Silverio has failed to adequately allege that she engaged in a statutorily protected expression, the Court finds that she cannot establish a case for retaliation under the FCRA, Title VII, or Section 1981.

### 4. Conclusion

For the reasons stated above, the Court **grants** Just Brands's motion to dismiss. (**Mot., ECF No. 14**.) The Court dismisses Lu Silverio's amended complaint **with prejudice** because she has failed to state her claims under Rule 12(b)(6).

Additionally, the Court dismisses Lu Silverio's amended complaint **without leave to amend**. Lu Silverio requests leave to amend as an afterthought, in a footnote at the end of her response in opposition to Just Brands's motion to dismiss, making the request both procedurally defective and lacking in substantive support under Eleventh Circuit Precedent. *See Newton v. Florida*, 895 F.3d 1270, 1277-78 (11th Cir. 2018) (reaffirming the rule that a request for leave to amend is not properly raised if embedded in a memorandum in opposition to a motion to dismiss); *see also Avena v. Imperial Salon & Spa, Inc.*, 740 F. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend."). The Court will not now afford Lu Silverio another bite at the apple where she declined "to follow the well-trodden procedural path toward amendment." *Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 Fed. App'x 925, 930 (11th Cir. 2016).

Finally, the Clerk is directed to **close** this case.

**Done and ordered** at Miami, Florida on October 2, 2023.

_____
Robert N. Scola, Jr.
United States District Judge